**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Brittany S. Scott (State Bar No. 327132)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
         bscott@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646)-837-7150
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com

**DRURY LEGAL, LLC**
Scott R. Drury (State Bar No. 355002)
6 Carriage Lane
Highwood, Illinois 60040
Telephone: (312) 358-8225
E-mail: scott@drurylegal.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TOBIN BATES-FERREIRA individually and on behalf of all other persons similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> PHILLIP MORRIS INTERNATIONAL INC. and SWEDISH MATCH NORTH AMERICA, LLC, <br><br> Defendant. | Case No. 2:24-cv-00987-TLN-CKD <br><br> **PLAINTIFF'S OPPOSITION TO SWEDISH MATCH NORTH AMERICA LLC'S MOTION TO STAY** <br><br> Judge: Hon. Troy L. Nunley |

**TABLE OF CONTENTS**

**PAGE(S)**

INTRODUCTION ...................................................................................................................... 1

STATEMENT OF FACTS ......................................................................................................... 2

ARGUMENT .............................................................................................................................. 5

I.      LEGAL STANDARDS ................................................................................................. 5

II.     THE FIRST-TO-FILE RULE DOES NOT APPLY ..................................................... 6

       A.     The Chronology of the Actions Does Not Weigh in Favor of a Stay ................ 6

       B.     The Parties Are Not Substantially Similar ........................................................ 6

       C.     The Issues Are Not Substantially Similar ......................................................... 7

III.    AS A MATTER OF EQUITY, THE COURT SHOULD NOT APPLY THE FIRST-TO-FILE RULE ................................................................................................. 9

       A.     There Is Strong Evidence that Schlesinger Engaged in Forum Shopping .......................................................................................................... 10

       B.     The Proximity in Time of the Filing of *Kelly* and the Present Case Weighs in Favor of Not Applying the First-to-File Rule ............................... 11

       C.     Other Equitable Considerations ...................................................................... 12

CONCLUSION ........................................................................................................................ 12

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Adoma v. Univ. of Phoenix, Inc.*,
    711 F. Supp. 2d 1142 (E.D. Cal. 2010) .................................................................. 6, 12

*Alltrade, Inc. v. Uniweld Products, Inc.*,
    946 F.2d 622 (9th Cir. 1991) .............................................................................. 5, 6, 10

*Apple Inc. v. VoIP-Pal.com, Inc.*,
    506 F.Supp.3d 947 (N.D. Cal. 2020) ........................................................................ 11

*Ass'n of Irritated Residents v. United States Envtl. Protection Agency*,
    2018 WL 3548885 (N.D. Cal. July 24, 2018) ............................................................ 5

*Associated Mills, Inc. v. Regina Co.*,
    675 F. Supp. 446 (N.D. Ill. 1987) .............................................................................. 11

*Avery v. TEKsystems, Inc.*,
    2022 WL 3998499 (N.D. Cal. Aug. 31, 2022) ......................................................... 7, 8

*Capitol Records v. Optical Recording Corp.*,
    810 F.Supp. 1350 (S.D.N.Y. 1992) ........................................................................... 11

*Effinger v. Ancient Organics LLC*,
    657 F.Supp.3d 1290 (N.D. Cal. 2023) ......................................................................... 8

*Gatlin v. United Parcel Service, Inc.*,
    2018 WL 10161198 (C.D. Cal. Aug. 23, 2018) .......................................................... 9

*Glover v. Ferrero USA, Inc.*,
    2011 WL 5007805 (D.N.J. Oct. 20, 2011) ................................................................ 11

*K-Swiss Inc. v. Puma AG Rudolf Dassler Sport*,
    2009 WL 2049702 (C.D. Cal. July 9, 2009) ............................................................. 11

*Lac Anh Le v. PricewaterhouseCoopers LLP*,
    2008 WL 618938 (N.D. Cal. 2008) ............................................................................. 6

*Landis v. North Am. Co.*,
    299 U.S. 248 (1936) ..................................................................................................... 5

*Mattero v. Costco Wholesale Corp.*,
    336 F.Supp.3d 1109 (N.D. Cal. 2018) ......................................................................... 8

*Meza v. Procter & Gamble Co.*,
    2023 WL 3267861 (C.D. Cal. Apr. 27, 2023) ........................................................... 10

*Murphy v. Sprint/United Mgmt. Co.*,
  2021 WL 58553579 (E.D. Cal. Dec. 9, 2021) .................................................................. 10

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
  678 F.2d 93 (9th Cir. 1982) ............................................................................................ 5

*Sarieddine v. Big Bang Vape Co., LLC*,
  2017 WL 5643181 (C.D. Cal. Mar. 30, 2017) ......................................................... 11, 12

*Scholl v. Mnuchin*,
  483 F.Supp.3d 822 (N.D. Cal. 2020) ............................................................................ 11

*Urbina v. Freedom Mortg. Corp.*,
  2020 WL 4194086 (E.D. Cal. July 21, 2020) ............................................................... 12

*Wilkie v. Gentiva Health Servs., Inc.*,
  2010 WL 3703060 (E.D. Cal. Sept. 16. 2010) ........................................................ passim

*Williams v. WinCo Foods, LLC*,
  2013 WL 211246 (E.D. Cal. Jan. 10, 2013) .................................................................. 10

*Zimmer v. Domestic Corp.*,
  2018 WL 1135634 (C.D. Cal. Feb. 22, 2018) ................................................................. 9

*Z-Line Designs, Inc. v. Bell'O Int'l, LLC*,
  218 F.R.D. 663 (N.D. Cal. 2003) .................................................................................. 11

**STATUTES**

Cal. Bus. & Prof. Code § 17200 .............................................................................................. 2

Cal. Bus. & Prof. Code § 17500 .............................................................................................. 2

Cal. Civ. Code § 1750 .............................................................................................................. 2

**RULES**

Fed. R. Civ. P. 12(b)(2) ........................................................................................................... 5

**INTRODUCTION**

Invoking the first-to-file rule, Defendant Swedish Match North America, LLC ("Defendant" or "Swedish Match") seeks an indefinite stay of this case, pending the outcome of any class certification motion filed in *Kelly v. Swedish Match North America, LLC.*, No. 0:24-cv-60437-WPD (S.D. Fla.) ("*Kelly*"), which was filed a mere ten days before this action and has not progressed beyond the pleadings stage. In bringing its motion, Defendant conceals from the Court the true procedural history of *Kelly*, and Defendant's own contention that *Kelly*'s continued existence in Florida is the product of forum shopping and gamesmanship on the part of the *Kelly* plaintiff's counsel.

In actuality, the first-filed action was *Wolters v. Swedish Match North America, LLC*, No. 3:24-cv-00417-AGS-MMP (S.D. Cal.) ("*Wolters*"), filed in the Southern District of California by the same counsel who subsequently filed *Kelly*. *Wolters* was filed on behalf of a nationwide class and two California classes. *Wolters* was filed on March 1, 2024, followed by *Kelly* on March 19, 2024. Plaintiff filed this action on March 29, 2024.

After defense counsel moved to transfer *Kelly* to the Southern District of California, and *after* Plaintiff filed the present action, counsel in *Wolters* and *Kelly* voluntarily dismissed *Wolters*, thereby abandoning the California classes and leaving the Florida-based counsel to litigate the later-filed *Kelly* action in Florida. At the time of their dismissal of their first-filed case in favor of a forum across the country from California, counsel in *Wolters* and *Kelly* knew about this action.

The above-described gamesmanship precluded the transfer of *Kelly* to the Southern District of California. At the same time, it made clear the distinctions between this case and *Kelly*. Indeed, here, Plaintiff's case largely focuses on California consumer protection claims, claims for which the plaintiff in *Kelly* cannot seek or obtain relief.

Defendant now seeks to benefit from the gamesmanship and forum shopping of counsel in *Wolters* and *Kelly*, despite having strenuously argued against it in prior filings. This Court should not countenance these games and should deny Defendant's motion. As discussed below, a first-to-file analysis demonstrates that the rule does not apply in this case. However, even if the first-to-file

factors weighed in favor of its application, such a result is not proper because it would be inequitable.

## STATEMENT OF FACTS

*Plaintiff's Action*

On March 29, 2024, Plaintiff Bates-Ferreira, a California resident, filed the present action (hereinafter, "*Bates-Ferreira*") against Defendant and Defendant Philip Morris International Inc. ("PMI") (Swedish Match and PMI, collectively, "Defendants") on behalf of himself and other similarly situated individuals alleging violations of: (1) California's Unfair Completion Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; (2) California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*; (3) California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*; (4) common law fraud; (5) breach of the implied warranty of merchantability; and (6) unjust enrichment. *See* Dkt 1. Plaintiff subsequently filed a First Amended Complaint (the "FAC") on May 23, 2024, solely to include his actual name as opposed that of "John Doe."[1] *See* Dkt. 20. Plaintiff's case is the only action seeking claims under California law.

Plaintiff alleges that Defendant manufactured, sold and deceptively and unfairly marketed ZYN-branded oral nicotine pouches. *Id.* ¶ 1. ZYN is the latest chapter of the tobacco-company playbook, including the playbook of Defendant, to hook adolescents and young adults on nicotine – a highly addictive drug – thereby creating a captured market for nicotine products. *Id.* ¶ 2.

A key aspect of ZYN is the ability to use it discretely. *Id.* ¶ 5. ZYN is sold in cans designed to look like containers for a popular brand of mints, and the pouches are designed to resemble a piece of gum. *Id.* ¶ 6.

Despite ZYN merely providing a new delivery mechanism for Defendant's addictive nicotine, Defendant deceptively and unfairly marketed and promoted ZYN as being both healthy and a nicotine-cessation device, whereas in fact, as Defendant knew, ZYN: (1) had no health benefits; (2) was not a proven or authorized cessation device; (3) would merely lead to nicotine addiction for new users; and (4) sustain nicotine addiction for those already addicted. *Id.* ¶ 7. In the

---

[1] Plaintiff has since voluntarily dismissed PMI. Dkt. 29.

end, Defendant's purpose in manufacturing, marketing and selling ZYN was to hook a new generation of users on nicotine and maintain the nicotine addictions of those already addicted. *Id.* ¶ 10. By doing so, Defendant ensured its sustained success and profitability. *Id.*

Plaintiff seeks to represent a nationwide class of ZYN users, as well as a subclass of youth ZYN users and two California subclasses:

> **The Nationwide Class:** All persons in the United States who used oral nicotine pouches produced and manufactured by Defendant[] and marketed and sold under the brand name ZYN;
>
> **The Youth Subclass:** All persons in the United States who used oral nicotine pouches while under the age of 18 that were produced and manufactured by Defendant[] and marketed and sold under the brand name ZYN;
>
> **The California Subclass:** All residents of the State of California who used oral nicotine pouches that were produced and manufactured by Defendant[] and marketed and sold under the brand name ZYN; and
>
> **The California Youth Subclass:** All residents of the State of California who used oral nicotine pouches while under the age of 18 that were produced and manufactured by Defendant[] and marketed and sold under the brand name ZYN.

*Id.* ¶ 126.

**The Product Liability Actions**

> ***The Wolters Action***

On March 1, 2024, Schlesinger Law Offices, P.A. ("Schlesinger"), based in Fort Lauderdale, Florida, filed *Wolters* in the Southern District of California. *Wolters* was a putative class action brought by a California resident, asserting claims for: (1) strict liability – design defect; (2) strict liability – failure to warn; (3) negligence; and (4) fraud. *Wolters* Dkt. 1. The plaintiff in *Wolters* sought to represent a narrower nationwide class than the nationwide class at issue in this case – namely, a nationwide class of persons who *purchased* (as opposed to *used*) ZYN products in the United States. *Id.* ¶ 45. The plaintiff also sought to represent: (1) a class of California residents who purchased ZYN products; and (2) California residents who, at their time of use of ZYN products, were under the age of 18. *Id.*

*The Kelly Action*

On March 19, 2024, just ten days before the filing of the present action, Schlesinger filed *Kelly* in the Southern District of Florida. *Kelly* Dkt. 1. As Swedish Match's counsel (who also represent Swedish Match here) asserted in that case, the *Kelly* complaint was "nearly word-for-word identical" to the *Wolters* complaint, save for the name and citizenship of the plaintiff and the replacement of the California classes with Florida classes. *Kelly* Dkt. 7 at 4-5.[2]

*Swedish Match's Motion to Transfer or Stay Kelly*

Invoking the first-filed rule, on April 2, 2024, Swedish Match moved to stay or transfer *Kelly* to the Southern District of California where *Wolters* was pending. *See, generally*, *Kelly* Dkt. 7. By that time, Plaintiff, here, had already commenced this action.

On April 3, 2024, a Schlesinger attorney sent an email to Plaintiff's counsel in this case in which it acknowledged the existence of this case and sought to talk with Plaintiff's counsel. Declaration of Brittany Scott ("Scott Decl."), Exhibit 1 (April 3, 2024 Schlesinger email). Later that day Schlesinger attorneys and Plaintiff's counsel talked by telephone, during which Plaintiff's counsel confirmed the existence of this case. Scott Decl. ¶ 3. Counsel made no agreements regarding the coordination of the cases. *Id.*

On April 9, 2024, Schlesinger filed a motion to voluntarily dismiss *Wolters* without prejudice. *See Wolters* Dkt. 13. Schlesinger then argued that Swedish Match's motion to transfer or stay *Kelly* was moot. *Kelly* Dkt. 11. As a result of Schlesinger's move, *Kelly* was not transferred to California and, instead, it proceeded to be litigated in a district as far away in the continental United States from this district as possible.

Swedish Match disputed that the dismissal of *Wolters* mooted Swedish Match's motion, accused Schlesinger of forum shopping and insisted that *Wolters* remained the first-filed action. *Kelly* Dkt. 12. According to Swedish Match "[Schlesinger] then went forum-shopping. They dismissed the *Wolters* suit without prejudice, hoping it would foil Swedish Match's motion to transfer." *Id.* at 1. Swedish Match requested that its motion be granted, arguing that "[t]ransfer of [*Kelly* to the Southern

---

[2] Citations to docketed entries are to the CM/ECF-stamped page numbers.

1  District of California] would ensure that Plaintiff's counsel's efforts to game the system would be

2  given no effect." *Id.* at 2. Swedish Match did not make the court aware of this case.[3][4] *See, generally*,

3  Dkt. 12.

## ARGUMENT

**I.     LEGAL STANDARDS**

"A stay pending the resolution of another case is appropriate only in 'rare circumstances.'" *Ass'n of Irritated Residents v. United States Envtl. Protection Agency,* 2018 WL 3548885, at *2 (N.D. Cal. July 24, 2018) (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 255 (1936)). The first-to-file rule allows a district court to transfer, stay or dismiss an action when a similar complaint has already been filed in another federal court. *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 623 (9th Cir. 1991). The rule allows for judicial efficiency and comity "when a complaint involving the same parties and issues has already been filed in another district." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982). "The most basic aspect of the first-to-file rule is that it is discretionary." *Alltrade, Inc.*, 946 F.2d at 628. Thus, the first-to-file rule is not an inflexible or rigid rule to be mechanically applied. *Wilkie v. Gentiva Health Servs., Inc.*, 2010 WL 3703060, at *2 (E.D. Cal. Sept. 16. 2010). Rather, a court should apply the rule keeping in mind the dictates of sound judicial administration. *Id.*

To apply the first-to-file rule, a court considers three threshold factors: "(1) the chronology of the two actions; (2) the similarity of the parties, and (3) the similarity of the issues." *Alltrade, Inc.*, 946 F.2d at 625-26. Even if the requirements of the first-to-file rule are met, a "court has broad discretion to not apply the rule in the interests of equity." *Wilkie*, 2010 WL 3703060, at *5. "The circumstances under which an exception to the first-to-file rule typically will be made include bad

---

[3] The *Kelly* court ultimately denied Swedish Match's motion. *Kelly* Dkt. 15 at 3. There is no indication that the court was aware of the present case. Without having all of the facts set forth herein, the court stated that it lacked sufficient evidence to conclude that the dismissal of *Wolters* was motivated by forum shopping. *Id.*

[4] On July 30, 2024, the matter of *Norris v. Phillip* [sic] *Morris Int'l. Inc.*, No. 3:24-cv-01267 (D. Conn.), was filed by Plaintiff's counsel, among others, in the home state of Philip Morris International Inc. ("PMI"). PMI has moved to dismiss the present action pursuant to Fed. R. Civ. P. 12(b)(2). *See* Dkt. 26. In response, Plaintiff has voluntarily dismissed PMI. Dkt. 29.

faith, anticipatory suit, and forum shopping." *Alltrade, Inc.*, 946 F.2d at 628 (internal citations omitted).

## II.     THE FIRST-TO-FILE RULE DOES NOT APPLY

### A.   The Chronology of the Actions Does Not Weigh in Favor of a Stay

The initial first-to-file factor is the chronology of the two actions. Plaintiff does not dispute that *Kelly* was filed on March 19, 2024, ten days before the present action was filed on March 29, 2024. However, as discussed below, when the equities are considered, the proximity in time between the filing of the two actions weighs against application of the first-to-file rule or, at best, makes the factor neutral.

### B.   The Parties Are Not Substantially Similar

Contrary to Defendant's contention (Dkt. 24-1 at 7), the parties in *Kelly* and the present case are not substantially similar. "The first-to-file rule does not require strict identity of the parties, but rather substantial similarity." *Wilkie*, 2010 WL 3703060, at *3. In a class action, "[s]ubtantial similarity of the parties is determined by comparing the proposed classes as they currently stand." *Id.* Courts disagree as to whether a court may compare putative classes before class certification has occurred. *Compare Lac Anh Le v. PricewaterhouseCoopers LLP*, 2008 WL 618938, at *1 (N.D. Cal. 2008) (not comparing putative classes prior to certification) with *Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1147–48 (E.D. Cal. 2010) (discussing disagreement and comparing putative classes prior to certification).

No class been certified in *Kelly* or in this matter. Because the plaintiff in the two actions is different, the substantial similarity factor is not met. *See Lac Anh Le*, 2008 WL 618938, at *1.

Even if the putative classes are compared, because it is not apparent whether the classes are substantially similar, this factor weighs against application of the first-to-file rule. *See Wilkie*, 2010 WL 3703060, at *3. As a threshold matter, Plaintiff, here, seeks to represent two California subclasses, whereas the plaintiff in *Kelly* does not seek to represent any California-only class or subclass. *Compare* Dkt. 20 ¶ 126 with *Kelly* Dkt. 1 ¶ 45. Rather, in *Kelly*, outside of the putative

nationwide class (discussed below), the plaintiff only seeks to represent two classes of Florida residents. *Kelly* Dkt. 1 ¶ 45.

As for the nationwide classes, Plaintiff acknowledges that the classes in both cases appear similar, as was the case in *Wilike*. *See Wilkie*, 2010 WL 3703060, at *3. However, closer examination reveals that Plaintiff's nationwide class is broader than the nationwide class in *Kelly*. Specifically, Plaintiff seeks to represent a nationwide class of "[a]ll persons in the United States who *used* oral nicotine pouches produced and manufactured by Defendant[] and marketed and sold under the brand name ZYN." Dkt. 20 ¶ 126 (emphasis added). In contrast, the plaintiff in *Kelly* seeks to represent the narrower nationwide class of "[a]ll persons who *purchased*, in the United States, Zyn products." *Kelly* Dkt. 1 ¶ 45 (emphasis added). As the court held in *Wilkie*, "with no discovery conducted in either case, it is yet to be seen whether the two actions substantially overlap" and, thus, at this juncture, it cannot be determined "that substantial similarity exists between the nationwide classes in the two actions." 2010 WL 3703060, at *3; *see also Avery v. TEKsystems, Inc.*, 2022 WL 3998499, at *3 (N.D. Cal. Aug. 31, 2022) (no substantial similarity of putative classes where only 13% of putative class members overlapped).

Notably, Defendant agrees that it cannot yet be determined whether substantial overlap exists between the nationwide classes in *Kelly*. Based on the lack of discovery, Defendant can only argue that the "class of individuals who 'purchased' ZYN is *likely* substantially the same as the class of individuals who 'used' ZYN." *Id.* at 7 (emphasis added). With respect to Plaintiff's California subclasses, Defendant tacitly concedes that the subclasses are unique by not addressing them at all. *See* Dkt. 24-1 at 7-8.

Given Plaintiff's unique California subclasses, the dissimilarity of the nationwide classes and the lack of discovery regarding the amount of overlap of putative nationwide class members, the Court should find that *Kelly* and the present case do not involve substantially similar parties. *See id.* As such, this factor weighs against application of the first-to-file rule.

C.   **The Issues Are Not Substantially Similar**

Contrary to Defendant's contention (Dkt. 24-1 at 8-10), the issues in *Kelly* and the present case are not substantially similar. The third prong of the first-to-file analysis requires that the issues

in both cases be substantially similar, not identical. *Avery*, 2022 WL 3998499, at *3. "To determine whether two suits involve substantially similar issues, [courts] look at whether there is 'substantial overlap' between the two suits." *Id.*

*Mattero v. Costco Wholesale Corp.*, 336 F.Supp.3d 1109 (N.D. Cal. 2018) is instructive. There, the court denied a stay based on the first-to-file rule even though the underlying questions of the two cases were similar. *Id.* at 1118-19. Although both actions were based on misleading marketing, the court found significant distinctions between the cases. For instance, the plaintiffs in the later-filed action brought "a claim arising under the Washington Consumer Protection statute," which was not included in the earlier-filed action. *Id.* The later-filed action also included "Sub-Class claims based on California's consumer protection statutes," which were not part of the earlier-filed action. *Id.* Further, the plaintiffs in the two actions at issue sought to represent nationwide classes for differing claims. *Id.* While the two actions shared a claim – *i.e.*, breach of warranty – the court did not find the overlap to be case dispositive. *Id.*; *see also Wilkie*, 2010 WL 30703060, at *4-5 ("What is relevant is that [the first filed case] alleges no California state law claims, so no overlap can exist; this makes the issues dissimilar.").

Here, as in *Mattero* and *Wilkie*, Plaintiff alleges unique state law causes of action, which have not been asserted in *Kelly*. This action includes three California-specific causes of action: (1) violation of California's UCL; (2) violation of California's CLRA; and (3) violation of California's FAL. Dkt. 20 ¶¶ 136-172. These differences are significant because the plaintiff in *Kelly* cannot assert state-specific consumer protection claims based on laws from a state in which he does not reside. *See Effinger v. Ancient Organics LLC*, 657 F.Supp.3d 1290, 1300 (N.D. Cal. 2023) (named plaintiffs lacked standing to assert causes of action on behalf non-California residents). Thus, staying this action would not lead to the resolution of Plaintiff's California claims.

Also, as in *Mattero*, *Kelly* and the present action only have a single claim in common – common law fraud. *Compare* Dkt. 20 with *Kelly* Dkt. 1. Just as the overlapping claim in *Mattero* did not result in a finding of substantially similar issues, neither should the overlapping claim here.

More generally, the central question in *Kelly* is whether Defendant's conduct resulted in personal injury or common law fraud (*see, e.g.*, *Kelly* Dkt. 1 ¶¶ 57-58), whereas the central

question in the present case is whether Defendant's conduct ran afoul of California consumer protection laws, thereby entitling Plaintiff and class members to economic and equitable damages. *See, e.g.,* Dkt. 1 at Counts I-III, V-VI, Prayer for Relief. The divergence of the central issues is underscored by the damages sought by each Plaintiff. The plaintiff in *Kelly* solely seeks compensatory and punitive damages (*see Kelly* Dkt. 1 at Prayer for Relief), while Plaintiff, here, seeks compensatory and punitive damages, as well as equitable relief including restitution and disgorgement. Dkt. 20 at Prayer for Relief.

Based on the above, the issues in *Kelly* and the present case are not "substantially similar." Therefore, the third and final factor weighs against application of the first-to-file rule.

Defendant reaches a different conclusion only by: (1) ignoring the divergent central questions presented in *Kelly* and the present case and, instead, focusing on discrete allegations; and (2) rehashing its incorrect contention that the two cases involve substantially similar putative classes. *See* Dkt. 24-1 at 8-9. Further, the cases relied on by Defendant (Dkt. 24-1 at 9) are distinguishable. Unlike here, in *Gatlin v. United Parcel Service, Inc.*, 2018 WL 10161198 (C.D. Cal. Aug. 23, 2018), most of the claims in the competing cases overlapped. *See id.* at *5-6. Further, unlike here, in *Zimmer v. Domestic Corp.*, 2018 WL 1135634 (C.D. Cal. Feb. 22, 2018), the competing cases were filed by the same counsel and "utilize[d] the exact same phrasing" throughout the complaint. *Id.* at *4. Indeed, counsel for the plaintiffs in those cases acknowledged that the actions should be consolidated. *Id.*

\*   \*   \*

As shown above, other than *Kelly* preceding this case by ten days (which factor is, at best, neutral), the factors of the first-to-file rule weigh against application of the rule. Accordingly, the Court should deny Defendant's motion.

### III. AS A MATTER OF EQUITY, THE COURT SHOULD NOT APPLY THE FIRST-TO-FILE RULE

Even if the first-to-file rule factors were met, it would be inequitable for the Court to apply it under the facts of this case. As discussed above, application of the first-to-file is subject to a court's broad discretion, and a court may disregard the rule in the interests of equity. *Wilkie*, 2010 WL 3703060, at *5. Here, given the strong evidence of forum shopping, the proximity in time of the

PLAINTIFF'S OPPOSITION TO MOTION TO STAY                              9
CASE NO. 2:24-CV-00987-TLN-CKD

filing of both complaints at issue, as well as other factors, it would be inequitable for the Court to apply the first-to-file rule.

### A. There Is Strong Evidence that Schlesinger Engaged in Forum Shopping

One exception to application of the first-to-file rule is the presence of forum shopping. *Alltrade, Inc.*, 946 F.2d at 628. "[T]here is a[ ] . . . strong inference of forum shopping when . . . parallel actions are filed by the same law firm . . . ." *Meza v. Procter & Gamble Co.*, 2023 WL 3267861, at *4 (C.D. Cal. Apr. 27, 2023); *see also Williams v. WinCo Foods, LLC*, 2013 WL 211246, at *7-8 (E.D. Cal. Jan. 10, 2013) (finding that filing of similar lawsuits involving the same claims on behalf of "nearly an identical class" by the same counsel suggested forum shopping and discussing cases holding similarly).

As detailed above, Schlesinger initially filed the *Wolters* action in the Southern District of California, followed by the *Kelly* action in the Southern District of Florida. The complaints were nearly identical. After Defendant moved to transfer *Kelly* to the Southern District of California, after Plaintiff commenced this action and after Schlesinger confirmed the existence of this case, Schlesinger filed a motion to voluntarily dismiss *Wolters*, leaving it to litigate *Kelly* in Florida.

By dismissing *Wolters*, Schlesinger abandoned the putative California class members defined in the *Wolters* complaint and subjected the California subclass members in this case to the possibility of not being able to pursue their claims, as evidenced by Defendant's motion. Further, by dismissing *Wolters*, Schlesinger avoided any possibility of *Wolters, Kelly* and the present case being consolidated in California, and Schlesinger facing the possibility of losing "control" of the case.

Notably, the concept of Schlesinger's forum shopping was first raised by Defendant in *Kelly*. *Kelly* Dkt. 12. Inexplicably, Defendant concealed that fact from the Court in its present motion and, instead, disingenuously represented to the Court that "no exception to the first-to-file rule applies." Dkt. 24-1 at 10. As part of its concealment, Defendant asserted that "Plaintiff cannot claim forum shopping, as Plaintiffs Kelly and Bates-Ferreira – not Defendants – chose the respective forums." *Id.* However, it is axiomatic that in the context of the first-to-file rule, the focus is on the conduct of the first-filing party, not that of the defendant. *See Murphy v. Sprint/United Mgmt. Co.*, 2021 WL

58553579, at *5 (E.D. Cal. Dec. 9, 2021). Defendant cannot claim it was unaware of this commonsense rule, given that it cites *Murphy* in its motion. *See* Dkt. 24-1 at 9-10. Thus, not only does the evidence show that plaintiff's counsel in *Kelly* engaged in forum shopping, it further shows that Defendant now seeks to benefit from that forum shopping by having this case stayed. The Court should not countenance such gamesmanship, especially when it will result in the claims of California residents not being heard (or, at least, being severely delayed).

    **B.**  **The Proximity in Time of the Filing of *Kelly* and the Present Case Weighs in Favor of Not Applying the First-to-File Rule**

"[C]ourts are less likely to apply the first-to-file rule when the cases are filed close together." *Apple Inc. v. VoIP-Pal.com, Inc.*, 506 F.Supp.3d 947, 960 (N.D. Cal. 2020). This is because "the rule's motivation and rationale is diminished" where "the cases are in their infancy and neither case has clearly expended more effort or made more progress." *Scholl v. Mnuchin*, 483 F.Supp.3d 822, 827 (N.D. Cal. 2020). For example, in *Sarieddine v. Big Bang Vape Co., LLC*, 2017 WL 5643181, at *2 (C.D. Cal. Mar. 30, 2017), the two cases were "in their infancy and were filed only thirteen days apart." These factors "weigh[ed] against a rigid application of the first-filed rule." *Id.; see Apple Inc.*, 506 F.Supp.3d at 960 (declining to apply the first-to-file rule where later-filed actions were filed within eleven days of the first-filed case); *K-Swiss Inc. v. Puma AG Rudolf Dassler Sport*, 2009 WL 2049702, at *2 (C.D. Cal. July 9, 2009) (concluding "that the first to file rule [wa]s of limited value in resolving the dispute" where plaintiff filed a complaint for declaratory relief only two business days before defendants filed in another jurisdiction); *Z-Line Designs, Inc. v. Bell'O Int'l, LLC*, 218 F.R.D. 663, 667 (N.D. Cal. 2003) (where first-filed action preceded second by two days, "the importance of the earlier filing date [was] diminished" given "th[e] relatively short time period between the two filings"); *see also Capitol Records v. Optical Recording Corp.*, 810 F.Supp. 1350, 1355 (S.D.N.Y. 1992) (twenty days between filings); *Glover v. Ferrero USA, Inc.*, 2011 WL 5007805, at *5 (D.N.J. Oct. 20, 2011) (declining to apply first-to-file rule where "the cases were only filed three weeks apart; thus, while technically the California action was filed first, the cases were filed chronologically close in time"); *Associated Mills, Inc. v. Regina Co.*, 675 F. Supp. 446, 448 (N.D. Ill. 1987) (declining to stay later-filed action that was filed twelve days after first-filed action).

Here, the infancy of the cases and the temporal proximity of these filings weigh against the application of the first-to-file rule. As in the cases cited above, *Kelly* and the present action were filed a mere ten days apart and both having motions to dismiss pending. Moreover, as in *Sarieddine*, both cases are at the pleading stage, and discovery has not commenced in either action.

*Urbina v. Freedom Mortg. Corp.*, 2020 WL 4194086 (E.D. Cal. July 21, 2020), relied on by Defendant (Dkt. 24-1 at 6), is distinguishable. In *Urbina*, the actions were filed a month apart, and there is no indication that the plaintiff challenged the proximity of the filings on equitable grounds. *See* 2020 WL 4194086, at *3.

Based on the proximity of the filing of the complaints in *Kelly* and the present case, the Court should not apply the first-to-file rule. In all events, the "chronology of the lawsuits" factor is, at best, neutral. When combined with the other first-to-file factors and the forum shopping, the equities of the case command denial of Defendant's motion.

    **C.**    **Other Equitable Considerations**

In *Adoma*, the court exercised its discretion and did not apply the first-to-file rule based on the fact that, *inter alia*: (1) the plaintiff asserted theories of recovery beyond those asserted in the first-filed action; and (2) the plaintiff sought relief under California state law, whereas no such California claims were asserted in the first-filed action. 711 F.Supp.2d at 1150. The same factors exist here. Specifically, Plaintiff seeks to recover based on equitable theories not asserted in *Kelly*, and Plaintiff has asserted claims under California state law that the plaintiff in *Kelly* cannot assert. To the extent any question exists as to whether the Court should disregard the first-to-file rule as a matter of equity, these final factors tip the scale in favor of disregarding the rule.

**CONCLUSION**

For the foregoing reasons, Defendant's Motion should be denied.

Dated: August 6, 2024　　　　　**BURSOR & FISHER, P.A.**

By: ___*/s/ Brittany S. Scott*___
　　　Brittany S. Scott

L. Timothy Fisher (State Bar No. 191626)
Brittany S. Scott (State Bar No. 327132)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
　　　　bscott@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646)-837-7150
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com

**DRURY LEGAL, LLC**
Scott R. Drury (State Bar No. 355002)
6 Carriage Lane
Highwood, Illinois 60040
Telephone: (312) 358-8225
E-mail: scott@drurylegal.com

*Attorneys for Plaintiff*